### UNITED STATES v. TAMUEL.
### SAME v. SHOBE.
#### Nos. 6712, 6713.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1938.

Rehearing Denied Feb. 16, 1939.

Edward J. Hess, of Chicago, Ill., for appellants.

Michael L. Igoe, U. S. Atty., and A. Bradley Eben, both of Chicago, Ill., for the United States.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The indictment charged the defendants in nine counts with a scheme to defraud and the use of the United States mails in the furtherance of the same, in violation of Section 215 of the Criminal Code, 18 U.S. C.A., Sec. 338.

The defendants were C. Joseph Tamuel, Frank D. Shobe, Frank E. Shipley, Earl M. Johnson, Charles Vavra and George P. Reeves. Tried by a court and jury. Verdict finding all defendants, except Vavra, guilty. Tamuel and Shobe were sentenced to serve three years in the penitentiary. They each prosecute separate appeals, which have been consolidated.

The points argued in the brief deal with the admission of evidence and insufficiency of evidence to support the finding of guilt. The fraudulent scheme charged is that the appellants, president, treasurer and agents of Devon Loan & Finance Company, represented to the persons intended to be defrauded, by means of letters sent through the United States mails and by means of oral communications, that the company was engaged in the business of purchasing accounts due and liquidating debts by advancing to the debtor the amount owed, who in turn would pay the same to the creditor (the person intended to be defrauded), that it would take notes from the debtor for the amount so advanced and would charge the creditor 25% or 30% of the amount received by the creditor from the debtor in settlement of the amount owed.

It was further charged that it was represented by the appellants that the Devon Loan & Finance Company was not a collection agency and would send no dunning letters to debtors nor antagonize them in

any way, but that a representative would personally interview and arrange to advance to the debtors the amounts owed the creditors; that the company would secure the notes of the debtors and would pay to the creditors either 70% or 75% of the amounts due them; that these representations and promises were false and fraudulent; that the defendants knew them to be false, in that the company did not purchase accounts due and liquidate debts, nor did it finance amounts from debtors to creditors; that it was a collection agency; that it sent dunning letters; that it did not have a representative personally interview the debtors and arrange to advance them money with which to pay their debts to the persons intended to be defrauded; that it did not pay 70% or 75% of all amounts collected from the debtors but retained all of the money collected from the debtors until 25% or 30% of the aggregate amount of claims, listed by the creditors, had been received by the company.

There is no serious controversy concerning the facts as developed by the trial. The Devon Loan & Finance Company was engaged in the business of collecting and adjusting accounts and had agents solicit from creditors a list of debts to be collected and adjusted under a contract which allowed 25% or 30% commissions on the total list of accounts submitted.

The first contact with the person intended to be defrauded was made by one of the agents. Shipley, Johnson, Vavra and Reeves were agents. The evidence of the government consisted of the testimony of thirty witnesses, nine of whom were named in the indictment as persons intended to be defrauded, and seventeen not named in the indictment, but who were of the same class as the persons intended to be defrauded. Space does not permit a recitation in detail of all such proof. The testimony of the witnesses concerning the representations made to them by the agents was in most instances very similar.

From the testimony of C. E. Bennett, a physician residing in Marshall, Missouri, it appears that on January 25, 1937, Charles Vavra came to his office and stated he represented the Devon Loan & Finance Company, a loan company, a finance company, not a collection agency; that they would interview the people who owed him money and request them to sign a note for the amount they owed, and upon receiving the note, they would pay Bennett 75% of the

account; that thereupon he signed a contract and gave Vavra a list of his debtors.

From the testimony of Ceasare Giannini, a grocer at Chisholm, Minnesota, it appears that in July of 1936, George P. Reeves called at his store and stated that the Devon Loan & Finance Company was a finance corporation loaning money to debtors; that they personally solicited debtors' notes, and when the debtor signed the note, the creditor received his check at once; that thereupon he signed a contract and delivered to Reeves a list of his debtors aggregating over $4,000; that the Devon Loan & Finance Company collected $205, no part of which had been remitted to the witness.

Appellants contend that they cannot be held liable because they were not aware of the nature of the misrepresentations being made by the agents and moreover the contract stated "No agent has authority to change the terms of the contract either verbal or in writing".

The evidence is clear that many persons were solicited by the agents and that immediately thereafter an extensive correspondence was entered into by the appellants with those persons who had made complaints after they had learned of the true nature of the contract. It further appears that Tamuel, president of the company and in charge of the agents, personally called upon one Richard G. Edwards soliciting his accounts and stated to him that Devon Loan & Finance Company was not a collecting agency; that it was a loan and finance company and did its business in a different manner; that if Edwards would give them the names of his clients who owed him money, they would take 30% commission and loan his clients the money to pay; that the client would sign a note and the company would pay Edwards 70% and that he would not have to wait until the client paid the company.

Regarding Shobe, it is undisputed that he was the active manager of the company and that a large number of complaints reached him, calling his attention to the misrepresentations of the agents, from which it is apparent that he knew that these persons were being misled by the agents.

Preeman v. U. S., 7 Cir., 244 F. 1, and Whitehead v. U. S., 5 Cir., 245 F. 385, are somewhat similar to the instant case regarding the right of the person intended to be defrauded to depend upon the statements of the agent, and the pronouncements

in those cases are applicable here. Taking the record as a whole, it is impossible for us to believe that the appellants were not aware of the nature of the misrepresentations. We are, therefore, of the opinion that the jury was justified in finding the existence of a scheme to defraud as alleged in each count of the indictment.

It is also contended that the court committed error in admitting two letters written by the witness, A. A. Charles. The letters were admitted and read to the jury but at the conclusion of the case, were withdrawn and the jury instructed to disregard them. The only purpose of the letters, as claimed by counsel for the government, was to show knowledge by the appellants and for that purpose they were competent evidence. That question we need not decide. The action of the court in permitting the letters to be read to the jury did not affect the substantial rights of the appellants and did not deprive them of a fair trial.

We have examined all other assignments of error and think they do not merit discussion. Whether the evidence was sufficient to establish guilt beyond a reasonable doubt or whether it was equally consistent with innocence or guilt were matters for the jury.

Judgment is affirmed.